# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| NER TAMID CONGREGATION OF NORTH TOWN, | ) ) ) | |
| Plaintiff, | ) ) | No.  08 C 1261 |
| vs. | ) ) | |
| IGOR KRIVORUCHKO, | ) ) | Magistrate Judge Jeffrey Cole |
| Defendant. | ) ) ) | |

## AMENDED MEMORANDUM OPINION AND ORDER *

### INTRODUCTION

**Plaintiff's Counsel:** . . . Well, where do you reside, sir?
**Defendant**: It's a good question . . . . (Krivoruchko Deposition at 49)

This seemingly simple question – the answer to which would prove so slippery and elusive

to the defendant – has caused far more dispute and consternation than normally occurs where the

question of residency is challenged.  But since residence – at least permanent residence – is a

component of domicile and thus intimately bound up in any inquiry into subject matter jurisdiction,

*see Koch v. Koch*, 450 F.3d 703, 712, n.7 (7th Cir. 2006)( "domicile is a person's legal home, the

---

\* Footnote 13 of the Memorandum Opinion and Order of 6/3/09 read: "Ner Tamid also points to an affidavit from its real estate broker stating that Mr. Krivoruchko told him more than once during negotiations that he lived in Florida and came into Chicago only occasionally on business.  (*Plaintiff's Sur-Reply*, at 10).  But that affidavit, supposedly Exhibit 4, is not a part of the record.  (Dkt. #77-2)." On 6/8/09, Ner Tamid's counsel properly called my attention to the fact that the affidavit had been filed separately from the response to the motion to dismiss as Document #79. *See* Plaintiff's Motion to Correct Memorandum Opinion. [#89]. Because of that separate filing, the affidavit had been overlooked. This Amended Memorandum Opinion and Order is issued to correct the misstatement in footnote 13 and to review the information in the affidavit.

'permanent residence of a person or the place to which he [or she] intends to return even though he [or she] may actually reside elsewhere.'"), it is a question that must be considered with care.[1]

The case began in 2007 when the defendant, a real estate developer, contracted with Ner Tamid Congregation to purchase property Ner Tamid owned in Chicago. But when the deadline for closing came – after having been extended once – Mr. Krivoruchko was unable to come up with the purchase price. He said he was unable to get financing because of the downturn in the real estate market, but there was no financing contingency clause in the contract. Ner Tamid sued him for breach of contract.

In his answer to the complaint, the defendant admitted that he is a citizen and resident of Florida. In an amended answer, that admission was repeated. Still later, in his response to the plaintiff's motion for summary judgment, the defendant for the third time admitted that he was a citizen and resident of Florida. But then, facing a ruling on the motion for summary judgment and by now on his third lawyer, the defendant, in a sudden *volte face*, insisted that those admissions were mistaken, and that he was and is actually a resident and citizen of Illinois. That being the case, the defendant said, the parties were not of diverse citizenship, and the complaint must be dismissed.

To say the least, the timing of the current motion to dismiss is rather suspicious. Indeed, one is tempted to say that "[t]he mind of justice, not merely its eyes, would have to be blind to attribute such an occurrence to mere fortuity." *Avery v. Georgia*, 345 U.S. 559, 564 (1953) (Frankfurter, J.,

---

[1] In federal law, citizenship means domicile, *The Northern League, Inc. v. Gidney*, 558 F.3d 614 (7th Cir. 2009), and domicile is "the place that a person considers to be his permanent home." *Kijowska v. Haines*, 463 F.3d 583, 586 (7th Cir. 2006). In determining an individual's domicile, *Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002), courts look both to a party's physical presence in a state and the party's intent to remain there. *Gilbert v. David*, 235 U.S. 561, 570 (1915); *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir. 1996). Thus, a party can reside in one state without being domiciled in that state if the person intends to return to another state. *See infra* at 10.

concurring). But suspicious timing, alone, is never outcome-determinative. *Cf. Argyropoulos v. City of Alton*, 539 F.3d 724, 734, 737 (7th Cir. 2008). "*Post hoc ergo propter hoc* is the name of a logical error, not a reason to infer causation." *United States v. Thompson*, 484 F.3d 877, 879 (7th Cir. 2007)(Easterbrook, C.J.). *Accord, Argyropoulos*, 539 F.3d at 734. And so we turn to the evidence that the parties have presented in support of their respective positions.[2]

## I.
## BACKGROUND

### A.
### He's Says He's From Florida . . .

When Ner Tamid sued in March of 2008, it alleged that Mr. Krivoruchko resided in Florida *and* was a citizen of that state. (*Complaint*, ¶ 3). A citizen of Illinois, Ner Tamid based federal jurisdiction on diversity of citizenship. (*Complaint*, ¶ 5). In his answer, filed May 16, 2008, Mr. Krivoruchko admitted he resided in Miami-Dade County, Florida and that he was a citizen of the state of Florida, and conceded that there was federal jurisdiction over this suit. (*Answer*, ¶¶ 3, 5). He did the same in his amended answer, filed in July of 2008. (*Amended Answer*, ¶¶ 3, 5). The first was signed by Frederick Sperling of Schiff Hardin, who had represented the defendant in other matters. The defendant then changed counsel, and so the amended answer was signed by George Vurdelja.

Ner Tamid then filed a motion for summary judgment, and the parties briefed the motion. Once again, on November 6, 2008, Mr. Krivoruchko admitted he was both a resident and a citizen of Florida; this time in his Local Rule 56.1(b) response to Ner Tamid's statement of facts. Mr.

---

[2] Nothing in this opinion should be read to indicate that the motion for summary judgment is or is not meritorious. That is a separate issue for another day.

Vurdelja handled this submission as well. While it is certainly true that consent cannot confer jurisdiction by consent, the defendant's three admissions of residency and citizenship in three, separate filings prepared by two different attorneys pursuant to Rule 11, Federal Rules of Civil Procedure, are not without significance.

## B.

### . . . No, Wait, He Meant Illinois

About a month later, Mr. Krivoruchko changed lawyers again. And with that change came an epiphany: The two answers to the complaint and the Local Rule 56.1(b) response were all "mistaken." He was not, after all, a resident or citizen of Florida. He was, all along, a resident and citizen of Illinois. He moved to dismiss the case for lack of subject matter jurisdiction. That motion was supported by his affidavit, which conveniently ignored his prior admissions, all of which remained part of the record. No motion to amend the answer (or the Rule 56 admission) was made. It was not until the issue of the defendant's prior admissions was raised by the court that they were acknowledged. At the insistence of the court, Mr. Krivoruchko filed a motion to amend his amended answer. However, his current submission does not specifically address his Local Rule 56.1(b) admission.

In his opening brief in support of the motion to file a second amended answer, Mr. Krivoruchko put it this way:

> While Defendant Krivoruchko mistakenly stated in his Answer that he was a citizen of Florida, such an admission was not done in bad faith or with ulterior motive. Defendant Krivoruchko simply did not understand what being a "citizen" of a state meant generally, or what role a party's citizenship played in the context of subject matter jurisdiction.

(*Motion for Leave to File a Second Amended Answer*, at 2).[3]

Two obstacles to this thesis are immediately apparent. First, the claim of mistake was not supported by affidavit, and a lawyer's unsupported statements in briefs are not evidence. *See Woolard v. Woolard*, 547 F.3d 755 (7th Cir. 2008); *United States v. Stevens,* 500 F.3d 625, 628 -629 (7th Cir.2007). Second, it is understandable that Mr. Krivoruchko was not conversant with the concept of "citizenship" as the term is used in the context of diversity jurisdiction. *See, e.g., Dakuras,* 312 F.3d at 258; *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir.1996). However, while he may not have understood the concept of citizenship – we put to the side that the defendant's two prior experienced lawyers certainly did – there is nothing particularly complicated about the concept of where one lives. Mr. Krivoruchko didn't simply say he was a *citizen* of Florida; he said he *resided* there. And he did so three times under the guidance of two different, accomplished lawyers. So the claim of mistake offered in the defendant's unsupported motion isn't particularly convincing.

Perhaps realizing that the unsupported claim of mistake was not much of an excuse, Mr. Krivoruchko changed his story by the time he filed his reply brief, just three weeks later. Of course, that is an impermissible tactic, for as the Seventh Circuit has admonished over and over, reply briefs are for replying, not for raising new matters or arguments that could and ought to have been advanced in the opening brief. *See e.g., United States v. Boyle,* 484 F.3d 943, 946 (7th Cir.2007)(arguments are forfeited); *United States v. Alhalabi,* 443 F.3d 605, 611 (7th Cir.2006); *Carter v. Tennant Co.,* 383 F.3d 673, 679 (7th Cir.2004); *Autotech Technologies Ltd. Partnership*

---

[3] Contrary to the fear Mr. Krivoruchko expressed in his opening brief, no one has intimated that his *initial* three assertions of Florida residency and citizenship were done in bad faith or with ulterior motive. Quite the contrary; the fear is that his *present* assertion of Illinois residence and citizenship is interposed to stave off a summary judgement motion and delay the conclusion of this case against him by sending the matter to state court, where Ner Tamid would have to start all over in pursuit of its claim.

*v. Automationdirect.com, Inc.,* 235 F.R.D. 435, 437 (N.D.Ill. 2006)(collecting cases).

The reply brief's "sandbagging" aside, *South Coast Air Quality Management Dist. v. E.P.A.*, 554 F.3d 1076, 1081 (D.C.Cir. 2009), as it turns out, he hadn't been mistaken as to his citizenship – and, apparently, his residency – as his opening brief lamented. Now he said he had no recollection of having anything to do with either his answer or amended answer. In support of this new explanation, Mr. Krivoruchko submitted an affidavit – he hadn't done so in his opening brief – in which he conceded that his previous attorneys provided him with copies of his answer and amended answer to review prior to filing them. (Krivoruchko Aff., ¶ 3). He said, however, that he did not recall having done so:

> I do not recall reviewing my previous Answer or Amended Answer prior to the filing of those documents with the Court. I do not recall any of my previous attorneys discussing Plaintiff's allegations in paragraphs 3 or 5 of the Complaint with me. I do not recall any of my previous attorneys discussing my answers to paragraphs 3 or 5 of the Complaint in my Answer or Amended answer with me. I do not recall any of my previous attorneys discussing the issue of my citizenship in Florida or Illinois with me. I do not recall any of my previous attorneys discussing the issue of where I reside with me. I do not recall any of my previous attorneys discussing with me how citizenship affects the subject matter jurisdiction of a federal court over a dispute such as this one.

(Krivoruchko Aff., ¶¶ 4-10). This sort of vacillation in testimony and implausible selectivity of memory are appropriate factors to be weighed in determining credibility and the weight to be accorded to Mr. Krivoruchko's various representations in his affidavits. *See Kadia v. Gonzales*, 501 F.3d 817, 819-20 (7th Cir. 2007); *Mullins v. Hallmark Date Systems*, 511 F.Supp.2d 928, 933 (N.D.Ill. 2007)(collecting cases). More importantly, as we shall see, Mr. Sperling, Mr. Krivoruchko's first lawyer and the one who prepared the answer, had no such infirmity of memory and was quite clear that he discussed each paragraph of the complaint with the defendant before answering.

What then, it may be asked, alerted Mr. Krivoruchko to his three "mistaken" admissions and prompted the realization that he wasn't after all a resident of Florida. He says that it was his uncle who looked at the papers and wondered why the case was in federal court. Mr. Krivoruchko did not say when this occurred, submitted no supporting affidavit from his uncle – whom he does not identify – and did not explain how his two, prior, skilled lawyers missed the boat while his non-lawyer uncle got it right. (Krivoruchko Aff., ¶ 4-10).[4] In fact, as will be seen shortly, Mr. Krivoruchko could not even give his uncle's address (although he supposedly lived with him) and did not even know what his uncle did for a living.

The remainder of the affidavit is devoted to Mr. Krivoruchko's discussion of his claimed ties to the state of Illinois, and his claimed residence here – contrary to his three prior admissions that he was a Florida resident. Mr. Krivoruchko wants to amend his answer to deny diversity jurisdiction and say that:

> he currently lives in an apartment owned by his parents in Miami-Dade County, Florida. Defendant Krivoruchko states that he has been living in that apartment since the end of September of 2008 when the property in which he was living in Chicago was sold. Since he has been living in the apartment owned by his parents. Defendant Krivoruchko travels to Chicago regularly to oversee and conduct his businesses in Chicago. . . . he intends to return to live in the Chicago, Illinois area in January or February of 2009 after some of the condominium units in his development become habitable. Further, Defendant Krivoruchko has purchased property in the Chicagoland area on which he intends to remodel a house to live in.

(*Proposed Second Amended Answer to Complaint*, ¶ 3).[5] Once again, the defendant ignores his

---

[4] The failure to provide a supporting affidavit could warrant an adverse inference. *See Oxman v. WLS-TV*, 12 F.3d 652, 661 (7th Cir. 1993). But even without the inference, the motion would be decided the same way.

[5] Even if this last assertion were to be credited, it is not an unambiguous statement of an intent to reside indefinitely in Illinois. *See* note 1, *supra.*

summary judgment response in which he conceded that he resides in Florida.

Under other circumstances, the fact that the explanation for those prior admissions did not come until the reply brief, might warrant striking the brief and denying the motion for leave to amend. After all, leave need not be granted where it is sought in bad faith, after undue delay, with a dilatory motive, or would unduly prejudice the opposing party. *Winters v. Fru-Con Inc.*, 498 F.3d 734, 740 (7th Cir. 2007). But Mr. Krivoruchko's questionable tactics do not control the ultimate issue of whether diversity jurisdiction exists. Parties cannot confer jurisdiction by consent, *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 389 (1998); *Matter of Marchiando*, 13 F.3d 1111, 1114 (7th Cir. 1994), or estoppel. *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 731 (7th Cir.1991). Hence, at this late date, it becomes necessary to ascertain whether Mr. Krivoruchko really is and was at the time the suit was begun, a citizen of Florida, as he belatedly asserts, or whether his earlier admissions regarding Illinois residency and citizenship were accurate. In making that determination, Mr. Krivoruchko's self-serving statements of intent are not binding, especially if they are inconsistent with his conduct, and it is from conduct that intent is inferred. *See infra* at 30.

## I.
## ANALYSIS

### A.
### Motions to Dismiss under Fed.R.Civ.P. 12(b)(1)

When ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff. *United Phosphorus, Ltd. v. Angus Chemical Co.*, 322 F.3d 942, 946 (7th Cir. 2003); *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). When the complaint is formally sufficient to establish diversity jurisdiction – as the complaint is here, as well as the answer

– the court looks beyond the allegations to view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *United Phosphorus*, 322 F.3d at 946; *Ezekiel*, 66 F.3d at 946. As the party asserting federal jurisdiction, Ner Tamid has the burden of proof. *Craig v. Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008); *America's Best Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992). Diversity jurisdiction must be established by a preponderance of evidence. *LM Ins. Corp. v. Spaulding Enterprises Inc.*, 533 F.3d 542, 547 (7th Cir. 2008); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540-41 (7th Cir. 2006). To accomplish that task, Ner Tamid has submitted reams of documentary evidence, including deposition transcripts from Mr. Krivoruchko and his two previous attorneys.

This does not mean, however, as Mr. Krivoruchko contends, that Ner Tamid must prove that he has changed his domicile from Illinois to Florida. (*Defendant Krivoruchko's Reply*, at 3). That argument begs the question to be decided, namely where was Mr. Krivoruchko domiciled when the suit was filed in March 2008. Moreover, he is the one who seeks to change the *status quo* through the motion to amend the answer which, as things now stand, has admitted residence and citizenship in Florida. Even in his recent reply brief, Mr. Krivoruchko says he was domiciled in Illinois along with his parents *until 2005 when they moved to Florida*. (*Id.*, at 7). That would make him domiciled in Florida when this suit was filed in March 2008. But the evidence will tell the tale.

**B.**

**The Meaning of "Citizenship" for Purposes of Diversity Jurisdiction**

To determine an individual's citizenship for diversity purposes, courts look to the state of the individual's domicile when the complaint was filed. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490

U.S. 826, 830 (1989); *Denlinger,* 87 F.3d at 216.[6] Domicile has two elements: (1) physical presence or residence in a state and (2) an intent to remain in the state. *Denlinger,* 87 F.3d at 216; *see also Dakuras,* 312 F.3d at 258 ("Citizenship for purposes of the diversity jurisdiction is domicile, and domicile is the place one intends to remain, . . . ."). The test has worked well in the past when both elements generally coincided, but it has become increasingly outdated as more people buy second or even third residences in different states – this case being a prime example. In these situations, the test can turn into a complex inquiry into an individual's intent. *Galva,* 924 F.2d at 730. In these more complex cases, courts have tried to glean intent from various factors: current residence, voting registration and voting practices, location of personal and real property, location of financial accounts, membership in unions and other associations, place of employment, driver's license and automobile registration, and tax payments. *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir.1994); *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8 (1st Cir.1991); 13B Charles Alan Wright et al., Federal Practice and Procedure § 3612 (2d ed.1984). While one or more of these factors might weigh in favor of a finding of citizenship, no single factor is dispositive. Wright, *et al.,* § 3612. Many of these factors are, in fact, easily manipulated and are, at times, in order "to opt in or out of federal diversity jurisdiction." *Galva,* 924 F.2d at 730.

### C.
### The Evidence

### 1.
### Mr. Krivoruchko's Affidavits and the Evidence That Undermines Them

Contrary to his three prior admissions that he was a resident and a citizen of Florida, Mr.

---

[6] It cannot be ascertained from Mr. Krivoruchko's proposed answer, which says he resides in Florida, where he was domiciled when the complaint was filed in March 2008.

10

Krivoruchko has now submitted two affidavits. The first accompanied his motion to dismiss, (hereinafter, "Krivoruchko Aff. 1"), and the second, more comprehensive effort supported the aforementioned reply brief, (hereinafter, "Krivoruchko Aff. 2"). In both, he asserts that, on March 8, 2008, when this case was filed, *see Mollan v. Torrance,* 22 U.S. 537, 549 (1824)(Marshall, C.J.); *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-571 (2004), he "lived at 2524 West Chicago, Apt. 4, Chicago Illinois." (Krivoruchko Aff. 1, ¶ 4; Krivoruchko Aff. 2, ¶ 26). A limited liability company of which he is sole member and manager owned that property. (*Id.*). It appears to have been a multi-unit property he was developing, and until all units were sold, he resided in one of them. (Krivoruchko Aff. 2, ¶ 26). He put his personal belongings from the unit on West Chicago into storage at a facility on Western Avenue in Chicago. (Krivoruchko Aff. 2, ¶ 27).

Mr. Krivoruchko's affidavit says nothing about the house he said he owned in his proposed Second Amended Answer, the one he supposedly plans to remodel and live in. The affidavit says only that he owns *no* house in Chicago. (Krivoruchko Aff. 2, ¶ 28). He also says he plans to return to Chicago to stay in one of the units in another multi-unit project he is developing when they become habitable. (Krivoruchko Aff. 2, ¶ 29). One supposes that this will also be a temporary situation until all those units are sold, but Mr. Krivoruchko does not say one way or the other. In any event, this does not express an intention to maintain a residency "indefinitely," as the law requires in order to turn" residence in fact into a domicile in law." *Perry v. Pogemiller*, 16 F.3d 138, 140 (7th Cir. 1993).

Mr. Krivoruchko and his family settled in the Chicago area when they emigrated from Russia in 1989; he was thirteen years old at the time. (Krivoruchko Aff. 2, ¶ 15). He states he went to high school in the area and briefly attended DePaul University in 1994. (Krivoruchko Aff. 2, ¶ 18). This

11

tidbit is contrary to his real estate development business's website which boasts that he actually *graduated* from that university. http://www.dolceliving.com/resume_igor.html. He continued to live with his parents in the Chicago suburbs until 2005, when they moved to Florida. (Krivoruchko Aff. 2, ¶ 16). Since that time, he says he "spend[s] time in both Illinois and Florida." (Krivoruchko Aff. 2, ¶ 17). He explains that he spends about one-third of his time in Florida, one-third in Illinois, and one-third elsewhere. (Krivoruchko Aff. 2, ¶ 45).

His travel records paint an entirely different picture. According to those, he flew from Florida to spend just two days in Chicago in January 2008 and February 2008. He made the trip again in March, this time for just three days. He traveled from Florida to Chicago for a single day in April 2008. He returned to Chicago again for a day in May 2008 – for the settlement conference in this case, and spent about three days here in June and July of 2008. (*Plaintiff's Sur-Reply to Motion for Leave to File Second Amended Complaint and Response to Motion to Dismiss* (*Plaintiff's Sur-Reply*"), Ex. 14). That's not spending a third of the time in Illinois – it's less than a tenth.

Because he frequently changes addresses, he says he finds it simplest to use the Florida address as his mailing address. (Krivoruchko Aff. 2, ¶ 53). This was, in fact, where Ner Tamid effected service. Moreover, when traveling on business, such as attending real estate conferences, Mr. Krivoruchko holds himself out as a Florida businessman. (*Plaintiff's Sur-Reply to Motion for Leave to File Second Amended Complaint and Response to Motion to Dismiss* (*Plaintiff's Sur-Reply*"), Ex. 13).

When in Florida, Mr. Krivoruchko lives with his parents at their apartment in Sunny Isles. (Krivoruchko Aff. 2, ¶ 46). He has no residence of his own in Illinois since vacating the unit on West Chicago. When here, he stays with his uncle in Northbrook. (Krivoruchko Aff. 2, ¶ 28). He

owns one vehicle registered and located in Illinois, and two registered and located in Florida. (Krivoruchko Aff. 2, ¶¶ 39-43). He holds an Illinois driver's license, and has never had a license from any other state. (Krivoruchko Aff. 2, ¶ 38). Mr. Krivoruchko is not registered to vote in any state. (Krivoruchko Aff., ¶ 18).

Mr. Krivoruchko claims that he develops property in Illinois, Texas, and Florida, with the majority of his projects being in Illinois. (Krivoruchko Aff. 1, ¶ 10). He says he owns eleven properties he is developing in Illinois through limited liability companies. (Krivoruchko Aff. 2, ¶¶ 22-25). He also owns several Florida limited liability companies along with his brother or father, and two Florida investment properties. His father is building a "spec" house on one property, while his brother manages the other property, a rental property, from which his brother retains the income. (Krivoruchko Aff. 2, ¶¶ 48-50). He also is a part owner of "at least two" limited liability companies in Texas, and one in Mississippi, along with family members. (Krivoruchko Aff. 2, ¶ 54).

Mr. Krivoruchko states that he has filed Illinois income tax returns for nine years, and plans on doing the same for 2008. Moreover, he says he "[i]ndentifies himself as an Illinois resident on [his] Illinois income tax returns." (Krivoruchko Aff. 2, ¶19). That statement is false. In his most recent Illinois income tax returns – from 2006 and 2007 – he identifies himself as a *Florida* resident, living at 18101 Collins Avenue, Sunny Isles Beach, Florida. (*Plaintiff's Sur-Reply*, Ex. 8). These returns are filed under the penalty of perjury as are his 2006 and 2007 U.S. individual tax returns (Form 1040) in which he lists his "home address" as 18101 Collins Avenue, Sunny Isles Beach, Florida. (*Plaintiff's Sur-Reply*, Ex. 7).

On the tax returns for his numerous limited liability corporations – be they in Illinois or Florida – Krivoruchko again, under the penalties of perjury, states that he is the designated Tax

13

Matters Partner, living at 18101 Collins Avenue, #4709, Sunny Isles Beach, Florida. (*Id.*, Ex. 9). Thus, on the tax returns for Westernview II LLC, Krivoruchko shows his address as 18101 Collins Avenue, #4709, North Miami Beach, Florida. On Schedule B to the 2007 return for that entity, the sole partner or shareholder is shown as Igor Krivoruchko at the Collins address in Sunny Isles, Florida. On the 2007 Schedule K-1s for Pulaskiview LLC, Springview LLC, Westernview II LLC, Elstonview LLC, IVK LLC, and Milwaukeeview LLC, Krivoruchko lists himself as the partner and gives his address as 18101 Collins Avenue, Sunny Isles Beach, Florida. On the 2007 K-1 for the Dolce Living Mississippi LLC, Krivoruchko is shown as the partner at the Collins Avenue address. The same is true for DBI LLC, ATIK LLC, Archerview LLC, Chicagoview LLC, and Chicagoview II LLC. Although Mr. Krivoruchko does not claim that these representations, like those in his three admissions in this case, were "mistaken," he effectively says they don't count and do not indicate that he resided or was domiciled in Florida.

Later, Mr. Krivoruchko explains that he meant he fills in the net income line for residents – line 13. (*Defendant Krivoruchko's Reply*, at 10; Ex. D).[7] Mr. Krivoruchko also says he has never filed tax returns for any other state. (Krivoruchko Aff. 2, ¶ 19). But, in this regard, it has to be noted that there is no personal income tax in Florida, the other state where he admittedly spends at least as much time. http://www.stateofflorida.com/

Bank accounts in Illinois are in the names of his Illinois limited liability companies

---

[7] Mr. Krivoruchko provided Ner Tamid with redacted copies of his tax forms, so Ner Tamid was unable to determine what lines he actually filled out. Also, it is somewhat curious that Mr. Krivoruchko filed Form IL-1040 in 2006 and 2007, seeing as even he concedes he resided in Florida at least some of the time during those years, and went so far as to indicate he was living in Florida on his forms. It would seem that he ought to have been filing Schedule NR, Non-Resident and Part-Year Resident Computation of Illinois Tax. www.revenue.state.il.us/individuals/filingrequirements/index.htm.

(Krivoruchko Aff. 2, ¶ 25), most of which show an address at 3931 W. Dickens Avenue, Chicago. But, we may not ignore the corporate separateness he has established, and having a series of LLCs utilizing the same address in Illinois does not make the partner of the LLC a citizen of Illinois. He also has a bank account in Illinois in his and his brother's names. (Krivoruchko Aff. 2, ¶ 44). In Florida, he maintains two joint checking accounts; one with his mother and one with his father. (Krivoruchko Aff. 2, ¶ 51). His mother, who lives in Florida, oversees his personal finances, including credit card statements, bill-paying, and balancing his accounts. (Krivoruchko Aff. 2, ¶ 52).

At best Mr. Krivoruchko's his affidavits portray him as itinerant – just the type of person alluded to in *Galva, supra.* Significantly, nowhere does he suggest that he has an intention to remain in Illinois or Florida. At worst, when compared with the documentary evidence, the affidavits portray him as not credible. It is his feeling that he should be considered an Illinois citizen – and that his answer and amended answer were wrong – because "the majority of [his] ties are to Illinois." (Krivoruchko Aff. 2, ¶ 55). But it's not his choice, and evidence does not support even this claim. Rather it reveals "a fable spun for the occasion." *Davis v. Indiana State Police*, 541 F.3d 760, 762 (7th Cir. 2008).

**2.**

**The Website for Mr. Krivoruchko's Real Estate Business**

There is additional evidence that must be factored into the analysis, and when it is, Mr. Krivoruchko's story unravels even more. Ner Tamid effected service on Mr. Krivoruchko on March 18, 2008, in Sunny Isles, Florida, upon a woman described as his "co-resident." at that time. He has never challenged that service. He lists as the principal address of Dolce Living Development, Hallandale Beach. Florida, on the website for his real estate development company, of which he is

an executive officer. http://www.dolceliving.com/resume_igor.html. The company appears to act as an "umbrella" for all his development interests and limited liability companies in the various states. It lists many of the projects associated with the limited liability companies Mr. Krivoruchko referred to in his affidavit, along with developments in Texas and Mississippi.

The Hallandale address would appear to be an office, as he lists it as a contact address along with addresses in Addison, Texas, and at 3931 W. Dickens in Chicago. http://www.dolceliving.com/contact.html. The Dickens address, incidentally, is listed on the parties' real estate contract as the location where notices to Mr. Krivoruchko should be sent. This listing is what Mr. Krivoruchko's current attorney said prompted him to look into challenging diversity jurisdiction.[8] But it is not a residence: Mr. Krivoruchko explains that the Dickens address is an office/warehouse, which houses TK Enterprises, an Illinois limited liability company he owns with his mother and father. (Krivoruchko Aff. 2, ¶¶ 30-35).

According to Mr. Krivoruchko's resume on the Dolce Living Homes website, the company began by building single family residences in Ft. Meyers, Florida. Since then, the website boasts of having developed real estate projects in Florida, Texas, Mississippi, and Illinois: 200,000 square feet of commercial space and more than 1500 multifamily residential units. Additional projects are planned for both Illinois and Texas, including two extensive subdivisions in Texas with about 750 units and five condominiums in Chicago.

---

[8] Mr. Krivoruchko's current attorney is not his uncle, who, it will be recalled, gave him the idea that something was wrong about jurisdiction.

**3.**

**Mr. Krivoruchko's Deposition Testimony and the Evidence That Contradicts It**

Mr. Krivoruchko also sat for a deposition on the subject of his residency and citizenship.[9]
Oddly, he struggled to answer what one might think were the simplest questions. He did not
remember when he attended college, which turned out to be 1995. (Krivoruchko Dep., at 6-8). He
did not recall when he stopped working in his family's printing business. (Krivoruchko Dep., at 9).
That turned out to be just six or seven years ago. (Krivoruchko Dep., at 10, 12). He did not recall
when his parents, with whom he lived, moved from Des Plaines, Illinois to Buffalo Grove, Illinois;
this was probably around 1994. (Krivoruchko Dep., at 14). [10]

He wasn't completely baffled, however. He knew that about 2005, he moved in – or so he

---

[9] The deposition was less than cordial. Here is a sample:

Plaintiff's counsel: Okay. Your objection is noted, Counsel, and don't tell your witness
what to do from now on.

Defense counsel: Don't tell me what to do.

Plaintiff's counsel: If we have to call the magistrate we will. Okay?

Defense counsel: That's fine.

Plaintiff's counsel: Don't suggest answers to him. I don't think the magistrate is going to
appreciate that.

Defense counsel: I'm not suggesting. I don't think the magistrate wants you telling him to
guess either.

(Krivoruchko Dep., at 15).

[10] Of course, this kind of testimonial misstep is not decisive and could just have easily been the result
of mistake. "Anyone who has ever tried a case or presided as a judge at a trial knows that witnesses are prone
to fudge, to fumble, to misspeak, to misstate, to exaggerate. If any such pratfall warranted disbelieving a
witness's entire testimony, few trials would get all the way to judgment." *Kadia,* 501 F.3d at 821.

claimed – with his uncle in Buffalo Grove, at 103 Newfield. (Krivoruchko Dep., at 17). His uncle

sold the house in Buffalo Grove in 2008, "[a]round [he] would say middle – around – right, around

the beginning of November" and moved to Northbrook, Illinois. (Krivoruchko Dep., at 17, 21-24).

His uncle actually sold the house August 12, 2008. (*Plaintiff's Sur-Reply*, Ex. 21). Mr. Krivoruchko

says he stays "off and on with him." (Krivoruchko Dep., at 17). Far more off than on, it would seem

– maybe that's why he was off on the sale date by three months. At the same time, however, Mr.

Krivoruchko claimed that his uncle's new house is his current, primary residence, and had been so

for almost two months. (Krivoruchko Dep., at 24-25).

Stunningly, he had no idea what the address was, not even the name of the street.

(Krivoruchko Dep., at 24-25). Moreover, he had "[n]o clue" what his uncle did for a living, but yet

he describes his relationship with him as "pretty close . . . good friends." (Krivoruchko Dep., at 17).

And worse, his testimony regarding his currently living with his uncle contradicted his proposed

answer, in which has says he has lived with his parents in Florida since September of 2008.

Mr. Krivoruchko got a new driver's license from the State of Illinois on November 13, 2008.

(Krivoruchko Dep., at 19). At first he said his old one expired; then he said he lost his old one.

(Krivoruchko Dep., at 19). Strangely, the new license lists his uncle's old Buffalo Grove address

on Newfield, which his uncle sold in August 2008, three months before he got his new drivers

license. No explanation was offered for why one would have listed in November as a current address

an address for a house that had been sold months before. (Krivoruchko Dep., at 17). This was

shortly before Mr. Krivoruchko and his third lawyer filed the motion to dismiss for lack of

jurisdiction at the beginning of December, hoping to change his prior admissions regarding his

residence and citizenship. His previous licenses were issued in 1993, 1997, and 2002, and all three

listed an address of 103 S. Newfield in Buffalo Grove, Illinois. (*Plaintiff's Sur-Reply*, Ex. 16).[11] Yet, recall that Mr. Krivoruchko testified that he did not move to the Newfield address until 2005. (Krivoruchko Dep., at 17).

Mr. Krivoruchko claimed that he stayed with his parents in Florida as often as he stayed with his uncle. (Krivoruchko Dep., at 6-8). Perhaps not surprisingly given his other testimony, he did not recall his parents' address either. (Krivoruchko Dep., at 25). He thought they lived in Miami Beach, but they actually make their home in Sunny Isles Beach, about nine miles away. (Krivoruchko Dep., at 25-26). At least he was able to recall the name of their street (Krivoruchko Dep., at 25), which, of course, could not be said with regard to what he now claims is his primary residence. They apparently own two units in the building, one is a rental, and they live in the other along with Mr. Krivoruchko and his brother, Ruslan. (Krivoruchko Dep., at 27). Oddly, in light of his claim that his uncle's current home in Northfield – whose street and address he did not recall – was his current, primary residence, Mr. Krivoruchko said that he was living with his parents as of the day of his deposition. (Krivoruchko Dep., at 278).

From March of 2007, until September of 2008, he claimed to have lived in a condominium unit on Chicago Avenue in Chicago. (Krivoruchko Dep., at 22-24). Another very curious assertion, and not believable, given the record of him taking brief round trip flights from Miami to Chicago during this period, spending just a day or two a month here before returning to Florida. (*Plaintiff's Sur-Reply*, Ex. 14). He explained that he typically lived in a unit in his developments until it was sold. (Krivoruchko Dep., at 58). Perhaps he meant he stayed in them for his brief trips from Florida.

---

[11] Ner Tamid states that it has records from the Secretary of State's office that indicate the November 2008 license was issued as a duplicate for a lost license. But the most recent application it provided as an exhibit is dated April 4, 2006. (*Plaintiff's Sur-Reply*, Ex. 16).

He did not say whether he confined this practice to Chicago – recall, he develops residential units in Florida and Texas as well.

His business paid the utility bills and assessments at the Chicago Avenue location (Krivoruchko Dep., at 23, 31) – conduct consistent with that address being utilized not as a permanent residence but as a business operation for which the business could deduct expenses associated with its operation. He didn't seem to know why that was: "Whatever the girl in the office paid, you know, I just signed the checks and that was it." (Krivoruchko Dep., at 23). The "office" was Mr. Krivoruchko's business office on Dickens Avenue in Chicago. (Krivoruchko Dep., at 23). The "girl" was the woman that handled all of Mr. Krivoruchko's business expenses, and he trusted her sufficiently to sign whatever she put in front of him. But he did not know her last name. He knows her simply as "Alla." (Krivoruchko Dep., at 32). Later, Mr. Krivoruchko said that his mother might have paid the assessments on the Chicago Avenue unit. (Krivoruchko Dep., at 32). She, as Mr. Krivoruchko stated in his deposition, handles all his personal expenses from Florida. At least he knows *her* last name.

Mr. Krivoruchko wasn't sure if he had a land telephone line registered in his name. (Krivoruchko Dep., at 32). He does. It is a Miami-Dade County area code, registered to the address 18101 Collins Ave, Sunny Isles Beach, where he lives with his parents, listed under his name in the AT&T white pages. (Krivoruchko Dep., at 33; *Plaintiff's Sur-Reply*, Ex. 10). He claimed he doesn't use it. (Krivoruchko Dep., at 33). He thought his parents might. He wasn't sure because his "mom takes care of all that stuff . . . ." (Krivoruchko Dep., at 33). When an airline asked him for a home contact number in connection with a recent trip, however, this number – the one he supposedly doesn't use and not the one at his supposed primary residence – was the number he provided.

(Krivoruchko Dep., at 33; *Plaintiff's Sur-Reply*, Ex. 14).

As for his Florida real estate development company, Mr. Krivoruchko knows precious little about it. His brother apparently takes care of it. (Krivoruchko Dep., at 37). Mr. Krivoruchko said he had "no clue" what his ownership interest in Dolce Living homes was. (Krivoruchko Dep., at 38). He also had no idea what was on the company's website. (Krivoruchko Dep., at 39). That includes his resume, which he claimed he had never seen until his deposition. (Krivoruchko Dep., at 57). Also, despite that company's website touting completed real estate developments in Texas, along with units presently under construction – two subdivisions filled with townhouses – and his averment in his first affidavit to the same effect, Mr. Krivoruchko testified that *he has never done any development work in Texas*:

A: Nothing at all.

Q: You've never done any development work in Texas?

A: Nothing. Yup.

Q: How about the companies you're associated with, have they ever done –

A: Never nothing. Hopefully we will start.

(Krivoruchko Dep., at 56). More significantly, this also contradicts the amended answer he now wants to file, where he states that he "presently has real estate developments in Texas . . . ." (*Second Amended Answer to Complaint*, ¶ 4).

He also does not have much of a handle on his taxes. He said he did not even review his filings. (Krivoruchko Dep., at 35). His accountant takes care of that, although Mr. Krivoruchko "kind of peek[s]" at them. (Krivoruchko Dep., at 35). He doesn't understand a lot of the information on his returns. (Krivoruchko Dep., at 36). He had no idea, for example, why his tax

21

return listed interest income from Cole Taylor Bank. (Krivoruchko Dep., at 34).

Mr. Krivoruchko offered little explanation for his three previous admissions in this case that he was a resident and citizen of Florida. When asked where he resided, he said that was "a good question" and finally answered, "Chicago." (Krivoruchko Dep., at 49). This claim contradicts the third answer he now wants to file: "[I] currently live[] in an apartment owned by [my] parents in Miami-Dade County, Florida." (*Proposed Second Amended Answer to Complaint*, ¶ 3). He testified that he resided in the Chicago area since high school, and did so in March 2008 when this lawsuit was filed. (Krivoruchko Dep., at 49). Of course this contradicts his proposed answer, and his previous answers and summary judgment submission, not to mention his affidavit. Moreover, his testimony is belied by the airline tickets showing that he flew to Chicago from Miami for just three days in March 2008, arriving the 6th and returning to Miami the 9th. (*Plaintiff's Sur-Reply*, Ex. 14).

If that were not enough, the vast majority of his credit card charges and purchases for that month occurred in Florida. Aside from gasoline, and a stop at a restaurant, and a grocery store on March 8, it is clear he spent the balance of the month in Florida. And his purchases were not just at restaurants and filling stations; they were of the type one might expect of a resident: department stores, regular trips to the grocery store and pharmacy, video rentals, health club membership, dry cleaning, etc. The charges are spread across the month in day-by-day intervals. Not surprisingly, this same pattern holds true for February through October 2008. Moreover the few, sporadic charges in the Chicago area are noted as "business expenses" or "travel." (*Plaintiff's Sur-Reply*, Ex. 29). And that's during the time Mr. Krivoruchko says his "primary residence" was his uncle's house, when he wasn't living in one of his Chicago condominium developments. It's obvious he actually spent very little time there at all, which might explain why he didn't even know the address or what

his uncle did for a living.

Mr. Krivoruchko maintained at his deposition that he did not remember whether his previous attorneys discussed his responses with him. (Krivoruchko Dep., at 43). But he contended that they weren't accurate:

Q: Why is it not accurate?

A: Because I'm a citizen of Illinois.

Q: And why are you a citizen of Illinois, sir?

A: I don't know because that's what – I mean, I'm a citizen of Illinois.

Q: Okay. Why do you think you're a citizen of Illinois, sir?

A: Because that's where I conduct most of my business and that's what I was told that I'm a citizen of Illinois.

(Krivoruchko Dep., at 43-44). Mr. Krivoruchko refused to answer the question "who told him he was a citizen of Illinois" on the basis of attorney-client privilege. (Krivoruchko Dep., at 44-45). When pressed, Mr. Krivoruchko said that it was his understanding that he was a citizen of Illinois because his house and condo were here and most of his businesses were here. (Krivoruchko Dep., at 51). But, that house was his uncle's, and that condo was one he developed and stayed in only temporarily until it was sold – as is his admitted habit.

### 4.

### What Mr. Krivoruchko's Previous Lawyers Had To Say

The plaintiff took the depositions of Mr. Krivoruchko's former attorneys. His first counsel was Frederick Sperling, a partner with the law firm of Schiff Hardin in Chicago. He oversaw the preparation of Mr. Krivoruchko's initial answer, along with senior associate, Nick Kahlon. Mr.

Sperling clerked for a Third Circuit Court of Appeals judge, has a wealth of experience in the federal court system, and is more than familiar with the requirements for establishing diversity jurisdiction. (Sperling Dep., at 52-54, 59). Significantly, he has represented Mr. Krivoruchko on prior occasions, mostly on lien claims involving Mr. Krivoruchko's construction projects in the Illinois courts. (Sperling Dep., at 74-75). [12]

Mr. Sperling testified that he discussed the allegations in the complaint with Mr. Krivoruchko "[o]n a number of occasions." And he had at least two conversations relating to the questions of residency, citizenship, and diversity jurisdiction: one prior to drafting the answer and one after he had provided Mr. Krivoruchko with a draft of it to review. (Sperling Dep., at 50, 54, 57-58). These conversations took place over the telephone, and Mr. Sperling recalled that Mr. Krivoruchko was in Florida on those occasions. (Sperling Dep., at 8, 55).

During those conversations, Mr. Sperling read Mr. Krivoruchko "each of the paragraphs in the complaint and each of the answers [they] had drafted, and [they] discussed them paragraph by paragraph going through the complaint." (Sperling Dep., at 55). He explained to Mr. Krivoruchko the concept of diversity jurisdiction and citizenship. (Sperling Dep., at 62). Mr. Krivoruchko described where he lived in Florida. (Sperling Dep., at 65). Mr. Sperling could not recall all the details of those conversations, but his "general recollection" was that Mr. Krivoruchko told him that "he spent most of his time in Florida, but came to Illinois at least once a month." (Sperling Dep., at 51). Elsewhere, he said his "general recollection was that he spent the majority of his time in Florida." (Sperling Dep., at 57). Based upon his conversations with Mr. Krivoruchko – all that Mr.

---

[12] Ner Tamid asked both attorneys to produce all documentation pertaining to Mr. Krivoruchko's citizenship for their depositions, but neither produced any documents other than an invoice From Mr. Vurdelja to Mr. Krivoruchko in Florida in June of 2008.

Krivoruchko told him, as well as information regarding his business interests from his website and brochure – Mr. Sperling determined that Mr. Krivoruchko was a citizen of Florida. (Sperling Dep., at 59-61). Indeed, at the time of the parties' settlement conference in May of 2008, Mr. Krivoruchko flew in from Florida. (Sperling Dep., at 64). Mr. Sperling stopped representing Mr. Krivoruchko shortly after that. (Sperling Dep., at 70).

Mr. Krivoruchko's second attorney, George Vurdelja, prepared his amended answer and responses to Ner Tamid's motion for summary judgment. In his brief deposition – the transcript of his testimony covers just 18 pages – he said he did not remember whether the subject of jurisdiction came up when he talked to Mr. Krivoruchko, whether he asked where Mr. Krivoruchko lived, provided him with a draft of the amended answer or just the parts he was amending, or conducted any analysis regarding the question of where Mr. Krivoruchko resided, his citizenship, or jurisdiction. (Vurdelja Dep., at 7, 11-12,14-15, 18). He did say he provided Mr. Krivoruchko with a draft of his summary judgment responses, and although Mr. Krivoruchko commented on those responses, Mr. Vurdelja did not recall him commenting on the residency and citizenship responses. (Vurdelja Dep., at 17-18).[13]

---

[13] Ner Tamid has submitted an affidavit from its real estate broker stating that during negotiations for the sale of the property during the Spring of 2007, he met numerous times with Mr. Krivoruchko and spoke with him on the phone many times. During these meetings and conversations, Mr. Krivoruchko told him more than once that he lived in Florida and came to Chicago approximately once a month to check on his projects. Mr. Krivoruchko told the broker he could be reached at his "home" in Florida. The number given by Mr. Krivoruchko, the affidavit says, is 305-466-7047. He also gave him another Florida number (954-455-0235) where he said he could be reached. (*Plaintiff's Sur-Reply*, at 10; and Document # 79). The "home" number in the affidavit is in fact listed to Mr. Krivoruchko at 18101 Collins Avenue, Sunny Isles Beach, Florida. (*See* Plaintiff's Sur-Reply, Ex. 10). An internet search for the 954 number reflects an unpublished number in Hollywood, Florida.

**D.**
**Application of the Law to the Evidence**

**1.**
**The Evidence Demonstrates That Mr. Krivoruchko is a Resident of Florida,
Now and When This Case Was Filed**

As already noted, the two elements to citizenship for diversity purposes are residence in a state and an intent to remain there. *Denlinger*, 87 F.3d at 216; *Dakuras*, 312 F.3d at 258. So firstly, where was Mr. Krivoruchko residing when this lawsuit was filed in March 2008? The evidence leaves no doubt of the answer:

| SOURCE | INFORMATION DISCLOSED |
|---|---|
| 1. AT&T White pages | Miami vicinity area code |
| 2. Website resume | Hallandale Beach Blvd, Hallandale Beach, FL |
| 3. Driver's License (7/2002, 4/2006) | Newfield Avenue, Buffalo Grove, IL |
| 4. Personal tax returns (2006;2007) | Collins Avenue, Sunny Isles, FL |
| 5. Business tax returns (2007) | Collins Avenue Sunny Isles, FL |
| 6. Airline Travel Records (Jan - Jun 08) | Spent less than three days in Chicago in March 2008, and about nine total here from Jan - June 2008 |
| 7. Airline ticket home phone (1/2008-6/2008) | Miami vicinity area code |

| | |
|---|---|
| 8. Credit card receipts/summary (2/2008-10/2008) | Bills sent to him in Florida<br>Most reflect charges for ordinary living expenses in Florida; charges relating to Illinois are for business travel with infrequent expenditures in Illinois for routine expenses.[14] |
| 9. Service of Summons (3/18/2008) | Collins Avenue<br>Sunny Isles, FL |
| 10. Discussions with first attorney (3-5/2008) | in Chicago sporadically on business |
| 11. Answer to Cmplt (5/16/08) | Resident & Citizen of Florida |
| 12. Amended Answer (7/02/08) | Resident & Citizen of Florida |
| 13. Summary Judgment Response (11/06/08) | Resident & Citizen of Florida |
| 14. Driver's License (11/13/2008) | Newfield Avenue,[15] Buffalo Grove, IL |
| 15. First Affidavit (12/05/08) | Claims lived at West Chicago Avenue, Chicago, IL (¶4) |
| 16. Second Affidavit (1/06/09) | Claims lived at West Chicago Avenue, Chicago, IL (¶26) |
| 17. Deposition (1/26/09) | Claims lived at West Chicago Avenue, Chicago, IL (pp. 21-22). |

---

[14] The Florida charges are for ordinary living expenses such as Costco in North Miami, Walgreens in Sunny Isles Beach, Sunny Isles Wines, Moscow Video in Sunny Isles Beach, World Market in Hollywood, Winn Dixie in Dania, Versace in Bal Harbour, Solutions Pharmacy in Sunny Isles, Marshall's in Aventura, Sports Authority in Miami, Whole Foods in Aventura, Nordstroms in Aventura, Winn Dixie in Hallandale, Bally's Club in Miami, Sunny Dry Cleaners in Sunny Isles, Bang & Olufsen in Aventura, Farrey's Hardware in North Miami, Neiman Marcus in Bal Harbour. Sur-Reply, Ex. 29. *See also supra* at 22-23.

[15] The 2008 drivers license is not fairly suggestive of residency in Illinois since it shows a present address for a home that Mr. Krivoruchko says had been sold by his uncle three months earlier and, even if the address were accurate it would not in and of itself make Mr. Krivoruchko a resident or domiciliary of Illinois. *See Galva,* 924 F.2d at 730.

Until Mr. Krivoruchko and his current counsel decided to challenge diversity jurisdiction, he may have had business interests in both Illinois and Florida, but every document and piece of evidence, save one, identified him as a Florida resident. This included his own answers in this case and summary judgment response. The only exception was his 2008 Illinois driver's license and it did not even list the address where he now claims he lived when the complaint was filed, the Chicago Avenue address; the address he claims he lived at from March 2007 through September 2008. So aside from a document that listed what Mr. Krivoruchko would have to admit was the incorrect address – even in the context of his version of the events – there is only Mr. Krivoruchko's own assertions to suggest he was, or is, an Illinois resident. And those are of recent vintage, contemporaneous with the formulation of the strategy to bounce this case from federal to state court. The consistent evidence pertaining to the time period when Mr. Krivoruchko had no motive to manipulate his residency indicates unequivocally that he was, and is, a Florida resident. And it is that evidence, not Mr. Krivoruchko's current assertions, that are more believable. *Compare Tome v. United States*, 513 U.S. 150, 156 (1995)(discussing the prior consistent statement doctrine and motive to falsify).

Moreover, when Mr. Krivoruchko's overall credibility – or lack thereof – is considered, the resolution is all the clearer. On more than one occasion, during hearings on this controversy, Mr. Krivoruchko's counsel protested that his client's credibility ought to be irrelevant to the question of his citizenship. No wonder. Mr. Krivoruchko was a poor witness. When he wasn't forgetting things or testifying equivocally, he was contradicting the documentary evidence or his own story, or – worst of all – the amended answer he hoped to file. He doesn't know his address – the address he claims is his primary residence. He doesn't know the last name of the woman who handles his business

expenses. He lied about how he designates his residency on his tax returns. He claimed to have almost no knowledge about his real estate development business. He contradicted his proposed answer, himself, and his business website regarding his development projects in Texas. He doesn't know what his uncle – with whom he supposedly lives and is "close" – does for a living. His testimony about living with his uncle contradicts the proposed answer he hoped to file, in which he said he lives in Florida with his parents. He didn't know he had a landline telephone number. And on and on.

When all these equivocations, inconsistencies, and contradictions are considered, the evidence becomes overwhelming that Mr. Krivoruchko was, and is, a Florida resident. His recent assertions that he is an Illinois resident and was an Illinois resident when this lawsuit was filed are simply not believable because they are contradicted by the evidence. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)("...factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it."); *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)("A denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it.... Whether to believe a witness depends not only on an instinctual reaction to facial expression, gestures, voice pitch, and other cues to honesty . . . but also on the consistency of the witness's testimony with itself, with other evidence, with common knowledge, and with the laws of nature.").[16]

---

[16] At a status hearing on February 27, 2009, counsel for the parties were asked whether they wanted an evidentiary hearing. Mr. Krivoruchko's attorney said he did not and counsel for Ner Tamid agreed. The
(continued...)

**2.**

**The Evidence Demonstrates That Mr. Krivoruchko Had No Intent To Remain
in Illinois And That He Intended To Remain In Florida**

That brings the analysis to the second component of citizenship: intent to remain in the state

indefinitely. *Perry,* 16 F.3d at 140; *Dakuras,* 312 F.2d at 258. Mr. Krivoruchko says little about his

intent to remain in Illinois. Flying into Chicago for two days a month from Miami does not make

one a Chicago resident or manifest an intent to maintain that residency "indefinitely." Those trips

are business trips – not "homecomings" – and Mr. Krivoruchko indicated as much in his records.

In his proposed answer, he claims that he has purchased property in the Chicago area and hopes one

day to remodel that house and live there. There is no other evidence to support this; nothing in the

documentary evidence, in his affidavits, or in his testimony. In fact, he swore in his second affidavit

that he did not own a house in Illinois. In sum, the evidence is far more compelling that the

---

[16](...continued)
plaintiff's "Sur-Reply to the Motion for Leave to File a Second Amended Answer and Response to the Motion to Dismiss For Lack of Subject Matter Jurisdiction," said that an evidentiary hearing was unnecessary. It cited *Mullins v. Hallmark Data Systems, LLC,* where the court explained:

> However, credibility involves more than demeanor. *Thompson v. Keohane,* 516 U.S. 99, 111 (1995); *Indiana Metal Products v. NLRB,* 442 F.2d 46 (7th Cir.1971). Most important is the witness's testimony, which "is not a discrete, self-contained unit of evidence examined and weighed without context; it is a part of the body of evidence which is intertwined and considered in its totality.' " *Ayi v. Gonzales,* 460 F.3d 876, 881 (7th Cir.2006). The implausibility of testimony, the shifting and vacillating explanations for conduct, the inconsistencies between testimony and objective evidence, and the internal inconsistencies within testimony may be so great that no reasonable fact-finder would credit it. *See United States v. Bradford,* 499 F.3d 910, 920-21 (8th Cir.2007); *Pinpoint, Inc. v. Amazon.Com, Inc.,* 347 F.Supp.2d 579, 583 (N.D.Ill.2004) (Posner, J.)(sitting by designation). *Cf. NLRB v. Dorothy Shamrock Coal Co.,* 833 F.2d 1263, 1268 (7th Cir.1987); *Miller-El v. Dretke,* 545 U.S. 231, 237 (2005).

511 F.Supp.2d at 933. *Mullins* went on to note that "where such factors are present, a court of appeals can find clear error in a finding of credibility based on demeanor, even though such determinations are, as a matter of practice, usually insulated from appellate review. *Ginsu Products, Inc. v. Dart Industries, Inc.,* 786 F.2d 260, 263 (7th Cir.1986)." 511 F.Supp.2d at 933.

defendant's intention was to remain in Florida, not to come here to Illinois and remain here indefinitely.

Intent for diversity purposes has been described as "a state of mind which must be evaluated through the circumstantial evidence of a person's manifested conduct." *Sadat v. Mertes,* 615 F.2d 1176, 1181 (7th Cir. 1980); *24 Hour Fitness USA, Inc. v. Bally Total Fitness Holding Corp.*, 2008 WL 4671748, *3 (N.D.Ill. Oct. 21, 2008). "[S]tatements of intent are entitled to little weight when in conflict with the facts." *Sadat,* 615 F.2d at 1181 (internal quotation marks omitted). "It is well-established that in ascertaining intent to remain for purposes of establishing domicile a party's entire course of conduct may be taken into account." *Perry v. Pogemiller,* 16 F.3d 138, 140 (7th Cir. 1993). *See also Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 701 (1983)(A party's self-serving statements of intent are not binding especially if inconsistent with his conduct); *District of Columbia*, 314 U.S. at 456; *Red River Lumber Co., Inc. v. Graff*, 889 F.2d 1084 (4th Cir. 1989)(citizenship is evaluated in terms of objective facts, not self-serving statements); *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 556 (5th Cir. 1985)(same).

Thus, even if one were to credit Mr. Krivoruchko's claim that he was living in a condominium on Chicago Avenue when this suit was filed, he, himself, refuted that he had any intent to remain there. He explained that he was just staying in a unit in his real estate development until it was sold. Then it was off to Florida. There was no hint of permanence there. And when all of the foregoing evidence is reviewed, it paints a picture of a man who intended, and intends, to remain in Florida.

In *Galva*, Judge Posner spoke of the inquiry into a party's domicile for diversity jurisdiction purposes as determining his "center of gravity." 924 F.2d 730. The subject of the inquiry there was

a man who had lived exclusively in Illinois all his life – 68 years. He had a home in Peoria and a vacation home in Florida. When he retired as president of the plaintiff company, he took out a Florida driver's license, registered to vote there, and began designating himself as a Florida resident on his state and federal tax forms. Although he began spending several months a year in Florida, he still spent more time at his home in Illinois, and the court concluded that his "center of gravity" – family, lifestyle, etc. – remained in Illinois. He had not become a Florida domiciliary, despite proclaiming he was on various government documents. *Id.* at 730-31.

*Galva* dooms the argument advanced by Mr. Krivoruchko. Mr. Krivoruchko spends but a small fraction of his time in Illinois; he owns no home or has a place of permanent abode here; and the two to three days a month (at most) that he is here it is on business. His tax returns filed under the penalty of perjury state that he is a Florida resident, and his parents, with whom he concedes he has and continues to live, are in Florida.[17] He moved with them there when they left Illinois many years ago. His main development company, Dolce Living, is headquartered in Florida. He has no "lifestyle" here: he's here temporarily when he is here, in condo units waiting to be sold or at a relative's house on a street whose name he does not know. If this story is a fabrication, it further undercuts the claim that the defendant is a citizen of Illinois; if it is true, it shows how infrequently he stays with his uncle, thereby also undercutting the defendant's current claim that the parties in this case are not of diverse citizenship.

In short, the facts show that the idea that he is an Illinois citizen was minted very recently and

---

[17] When considering an individual's "center of gravity," a number of courts have focused on that individual's family. *See 24 Hour Fitness USA, Inc.*, 2008 W L 4671748 at *4-5 (collecting cases). This is most often spouses and children, but Mr. Krivoruchko is unmarried. His family for these purposes in limited to his parents, with whom, as already noted, he has lived most of his life, and they are in Florida.

illustrate Judge Posner's concern in *Galva*: "Anyone with residences in two or more states could change domicile continually, . . . in order to . . . opt in or out of federal diversity jurisdiction." 924 F.2d at 730. Opting out is what Mr. Krivoruchko has attempted to do. It may be permissible in class actions; it isn't in cases like this.

## E.

### The Motion to Amend the Answer Must Be Denied

While Rule 15(a), Federal Rules of Civil Procedure, instructs that leave to amend shall be freely given "when justice so requires," a court may deny a plaintiff leave to amend if "there is undue delay, bad faith[,] or dilatory motive ... [, or] undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Sound of Music Co. v. Minnesota Min. & Mfg. Co.,* 477 F.3d 910, 922 (7th Cir. 2007). The evidence, fairly viewed as a whole, supports the conclusion that the proposed amendment was not sought in good faith and was designed to forestall resolution of the plaintiff's summary judgment motion. But even if that were not so, there can be no doubt that the proposed amendment is futile – that is, that it would not survive a motion for summary judgment. *Sound of Music Co.*, 477 F.3d at 922; *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

As the preceding discussion shows, the proposed amendment is unsupported by Mr. Krivoruchko's own assertions. It says he now lives with his parents in Florida and has done so since the condominium he had been staying at in Chicago was sold. That's diametrically opposed to his own testimony that his primary residence is in Buffalo Grove, Illinois with his uncle, and that he moved there from the Chicago condominium. And, the objective evidence admits of only one conclusion: Mr. Krivoruchko's residence was in Florida; that he intended to remain there, and that

he never acquired a new domicile in Illinois. "It is not enough to simply establish physical presence, but in order to turn residence in fact into a domicile in law, the party must show, by some objective act, his intention to maintain the residency indefinitely. *Perry*, 16 F.3d at 140.

Simply put, in the vernacular of Rule 15, justice does not require the amendment. Indeed, to paraphrase Justice Frankfurter in *Avery v. Georgia*, "[t]he mind of justice, not merely its eyes, would have to be blind to . . ." allow such an amendment. 345 U.S. at 564.

## CONCLUSION

In March 2008, when the complaint was filed, Mr. Krivoruchko was a citizen of Florida. He continues to be a citizen of that state. The parties are of diverse citizenship, and thus the court has subject matter jurisdiction. 28 U.S.C. §1332(a)(1). The defendant's motion for leave to file a second amended answer [#62] is DENIED, and the defendant's motion to dismiss for lack of jurisdiction [#58] is DENIED.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 6/10/09